UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MELODY A.,[1]

Plaintiff,

DECISION AND ORDER

-vs-

24-cv-6542-MAV

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

## INTRODUCTION

On September 13, 2024, Melody A. ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g), seeking judicial review of the Commissioner of the United States Social Security Administration's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB"). ECF No. 1. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF No. 6 (Plaintiff); ECF No. 11 (Commissioner). For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 6] is denied. The Commissioner's motion [ECF No. 11] is granted.

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear

---

[1] The Court's Standing Order issued on November 18, 2020, directs that, "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

directly on the resolution of the motions presently before the Court.

## I. Plaintiff's Applications

Plaintiff filed her application for DIB on October 14, 2021, alleging a disability onset date of September 7, 2021. Administrative Record ("AR") at 87, 251,[2] ECF No. 5. Her disability report indicated that her ability to work was limited by a personality disorder, chronic depression, anxiety, advanced degenerative disc disease, her status as a domestic abuse survivor, excessive alcohol and drug usage, and multiple concussions. AR at 265. Plaintiff's claims were initially denied in March 2022, and upon reconsideration in July 2022. AR at 70–107.

## II. Plaintiff's Hearing Before the ALJ

After the Commissioner denied her applications at the initial level and on reconsideration, Plaintiff appeared with counsel for a virtual hearing before an Administrative Law Judge ("ALJ") on September 21, 2023. AR at 30. At the beginning of the hearing, Plaintiff's counsel gave an opening statement:

> My client is an individual closely approaching retirement age. She has a high school education. Her past work was that of a call center assistant and in 2016 she had a compression fracture of her left spine as a result of a motor vehicle accident. Over time it has turned into degenerative disc disease of the lumbar spine, causing her significant pain and decreasing how long she can sit for, stand for, and walk for and how much weight she can lift and carry. Additionally, she suffers from anxiety. We have opinions in the file going over in detail about her physical and mental limitations and looking at those I believe she wouldn't be able to maintain any work in the [national] economy. Per Dr. Brown[f]eld, there is a very, very remote history of substance use.

AR at 35.

---

[2] The page references from the transcript are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system.

In her direct testimony, Plaintiff explained that her last job was in a call center, but that she stopped working when "[C]ovid came around and . . . [she] couldn't work from home" because her adult son and adult daughter were also working from home at that time. AR at 41–42. When the ALJ asked her whether she could perform the call center work now, Plaintiff responded that she "would never do that type of work again," and that she has "no tolerance anymore with people." AR at 43. Upon examination by her attorney, Plaintiff stated that she couldn't work now because she did not "have the confidence and cognitive skills that [she] had prior to the last three concussions," and the she was "not adapted." AR at 62–63. Yet when asked by the ALJ whether she was being treated for anxiety – i.e., "seeing any therapists [or] doctors . . . prescribing any medication for anxiety" – Plaintiff indicated only that she was taking St. John's wort and that she was not being treated at that time. AR at 63.

The ALJ also heard testimony from vocational expert Sakinah Malik (the "VE"), who opined that a hypothetical claimant with a residual functional capacity[3] ("RFC") identical to that which the ALJ ultimately determined Plaintiff to have – i.e., capable of a full range of sedentary work – would be able to perform Plaintiff's past relevant work as an appointment clerk, receptionist, customer service representative, and data entry clerk. AR at 51.

## III. The ALJ's Decision

On October 20, 2023, the ALJ issued a decision finding that Plaintiff was not

[3] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545.

disabled, and therefore did not qualify for DIB. AR at 24. At the outset, the ALJ found that Plaintiff met the insured status requirements for DIB[4] through December 31, 2025. AR at 17. Then, at step one of the Commissioner's "five-step, sequential evaluation process,"[5] the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of September 7, 2021. AR at 17.

At step two, the ALJ determined that Plaintiff had medically determinable physical impairments of long-Covid and degenerative disc disease of the cervical spine which were severe, and medically determinable physical impairments of hypertension, post-concussion syndrome, and obesity which were non-severe.[6] AR at 17–18. The ALJ also found Plaintiff had a medically determinable mental

[4] Claimants must meet the insured status requirements of the Social Security Act to be eligible for DIB. *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.130.

[5] In addition to the insured status requirements for DIB benefits, the Social Security Administration has established a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); citing, *inter alia*, 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

[6] If the ALJ finds a medically determinable impairment at step two, he or she must determine whether that impairment or combination of impairments is severe. 20 C.F.R. §§ 404.1521, 404.1523. "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522.

impairment of anxiety. AR at 18. He therefore performed the "special technique" required under 20 C.F.R. § 404.1520a[7] for mental impairments, and concluded that Plaintiff had no limitation "understanding, remembering, or applying information," "concentrating, persisting, or maintaining pace," and "adapting or managing oneself," and only mild limitations "interacting with others." AR at 18–19. Because he found that Plaintiff's medically determinable mental impairment caused no more than "mild" limitation in any of the functional areas, or more than minimal limitation in Plaintiff's ability to do basic work activities, the ALJ determined that Plaintiff's medically determinable mental impairment of anxiety were non-severe. AR at 20.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR at 20.

Before proceeding to step four, the ALJ found that Plaintiff had the RFC to perform a full range of sedentary work as defined in 20 C.F.R. § 404.1567(a). AR at

---

[7] When a claimant alleges mental impairments in support of their claim of disability, the ALJ must supplement steps two and three of the standard five-step analysis with what is known as the "special technique." *See* 20 C.F.R. § 404.1520a; *see Nedzad O. v. Comm'r of Soc. Sec.*, 577 F. Supp. 3d 37, 44 (N.D.N.Y. 2021). This technique requires the ALJ to determine first whether the claimant has a "medically determinable mental impairment." *Nedzad O.*, 577 F. Supp. 3d at 44. If the claimant is found to have such an impairment, the ALJ must rate the degree of functional limitation resulting from the impairment(s) across four broad functional areas, known as "Paragraph B criteria": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting and managing oneself. *See* 20 C.F.R. §§ 404.1520a(c)(3); 20 C.F.R. Part 404, Subpart B, Appendix 1 §§ 12.00(E)(1)–(4); *see also Nedzad O.*, 577 F. Supp. 3d at 44. Based on the record, the ALJ must make a finding as to the degree of any limitations in each functional area, using assessments of "none," "mild," "moderate," "marked," and "extreme," *see* 20 C.F.R. §§ 404.1520a(c)(4), which in turn informs whether the ALJ deems the mental impairment "severe" or "non-severe," *see id.* §§ 404.1520a(d)(1). If the ALJ rates the claimant's degree of limitation as "none" or "mild," the ALJ "will generally conclude that [claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(2).

20–23. Based on this RFC and on the testimony of the VE, the ALJ found at step four that Plaintiff was capable of performing her past relevant work as an appointment clerk, receptionist, and data entry clerk. AR at 23. Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act. AR at 23–24.

On July 16, 2024, the Appeals Council denied Plaintiff's request to review the ALJ's decision. AR at 1–6. The ALJ's decision thus became the "final decision" of the Commissioner. *See Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (citing 20 C.F.R. § 404.981) ("[I]f the Appeals Council denies review, the ALJ's decision becomes the [Commissioner]'s final decision.").

**LEGAL STANDARD**

Under 42 U.S.C. § 423(d), a claimant is disabled and entitled to DIB if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."

Where an individual's application for disability benefits has been denied, 42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision. The fourth sentence of § 405(g) empowers the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing."

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without

substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, the reviewing court must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the correct legal standards are applied, the district court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (noting that the phrase "substantial evidence" is a term of art used in reviewing administrative agency decisions to signify evidence that amounts to "more than a mere scintilla"). Thus, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448. Yet, although "the evidentiary threshold for the substantial evidence standard is not high, . . . [it] is also not merely hortatory: [i]t requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (internal quotation marks and citation omitted).

## DISCUSSION

In Plaintiff's motion for judgment on the pleadings, she argues that remand is warranted because the ALJ improperly excluded mental health limitations caused by Plaintiff's anxiety from his RFC determination, and failed to provide adequate explanation for their exclusion. ECF No. 6-1 at 12–21. In response, the Commissioner argues that the ALJ's decision was not erroneous, and was supported by substantial evidence. ECF No. 11-1. Having carefully reviewed the parties' papers and the relevant sections of the administrative record, the Court finds that Plaintiff's argument lacks merit, and therefore that her motion should be denied and the Commissioner's motion granted.

### I. The Absence of Mental Limitations in the RFC Determination

In arguing that the ALJ improperly excluded mental health limitations from his RFC determination and failed to provide an adequate explanation as to why such limitations were excluded, Plaintiff does not contest the ALJ's findings of non-severity at step two. Rather, Plaintiff argues that the ALJ's conclusion that Plaintiff was capable of her past semi-skilled work as an appointment clerk, receptionist, and data entry clerk, was inconsistent with the mental health limitations caused by her anxiety, which "would materially impact her ability to perform semi-skilled level work." ECF No. 5-1 at 12. Plaintiff therefore contends that this omission not only constitutes error, but also "has led to a finding not substantially supported by the totality of evidence, warranting remand." *Id.*

**A. Legal Principles**

Pursuant to 20 C.F.R. § 404.1545(a)(2), an ALJ must consider all of a claimant's medically determinable impairments, including non-severe impairments, when assessing a claimant's RFC. *See, e.g., Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) ("[An] RFC determination must account for limitations imposed by both severe and nonsevere impairments."). However, the requirement that the ALJ must *consider* Plaintiff's non-severe impairments in his RFC determination does not require him to *include restrictions* in his RFC to accommodate those impairments. *See, e.g., Andrew P. v. Comm'r of Soc. Sec.*, 719 F. Supp. 3d 248, 254–55 (W.D.N.Y. 2024) (collecting cases).

Indeed, "there are no regulations that mild limitations require mental limitations in the RFC." *Jane M. A. v. Comm'r of Soc. Sec.,* No. 19-CV-00808, 2021 WL 63066, at *5 (W.D.N.Y. Jan. 7, 2021)). Thus, where "an ALJ's findings of only mild limitations in mental functioning are supported by substantial evidence in the record, the ALJ is not required to include mental limitations or restrictions in the RFC." *Katherine R. v. Comm'r of Soc. Sec.*, No. 1:20-CV-01055-MJR, 2021 WL 5596416, at *7 (W.D.N.Y. Nov. 30, 2021) (citing, *inter alia*, *Lynette W. v. Comm'r of Soc. Sec.*, 19-CV-1168, 2021 WL 868625, at *4 (W.D.N.Y. Mar. 9, 2021)).

**B. The ALJ's RFC Discussion**

Here, the Court finds that the ALJ adequately considered Plaintiff's non-severe mental impairments in formulating Plaintiff's RFC, and that the RFC determination is supported by substantial evidence.

To begin with, at the conclusion of his analysis at step two, the ALJ acknowledged that his application of the special technique under 20 C.F.R. § 404.1520a was not an RFC assessment, which "requires a more detailed assessment." AR at 19. However, the ALJ also noted that "the following [RFC] assessment reflects the degree of limitation the undersigned has found in the [step two] mental function analysis." *Id.* Notwithstanding Plaintiff's suggestion that this was mere "lip service" to the rules (ECF No. 6-1 at 17), a review of the ALJ's RFC discussion shows that he did make a more detailed assessment of Plaintiff's mental functioning as required by 20 C.F.R. § 404.1545. In particular, the ALJ's RFC discussion properly evaluated three opinions in the record regarding Plaintiff's mental functioning, and supported his evaluations with substantial evidence from the "longitudinal evidence of record." AR at 22–23.

*i. Dr. Brownfeld*

First, the ALJ considered the opinion of consultative psychological examiner Adam Brownfeld, Ph.D, who examined Plaintiff in February 2022. AR at 22 (discussing AR at 466–69). The ALJ noted that Dr. Brownfeld found no evidence of limitation in understanding, remembering, and applying simple and complex directions and instructions, using reasoning and judgment to make work-related decisions, interacting adequately with supervisors, coworkers, and the public, sustaining concentration and performing a task at a consistent pace, sustaining an ordinary routine and regular attendance at work, maintaining personal hygiene and appropriate attire, and being aware of normal hazards and taking appropriate

precautions. AR at 22 (referencing AR at 468). He also noted that Dr. Brownfeld found Plaintiff to be moderately limited in regulating emotion, controlling behavior, and maintaining well-being, but that her mental limitations did not appear to be significant enough to interfere with Plaintiff's ability to function on a daily basis. *Id.*

The ALJ found Dr. Brownfeld's opinion to be "less than fully persuasive." *Id.* Although it was supported by Dr. Brownfeld's exam, it was not consistent with the longitudinal record. *Id.* Specifically, despite Dr. Brownfeld's statement that Plaintiff had moderate limitations in regulating emotion and controlling behavior, the ALJ cited several objective exams in the record which showed normal mood, pleasant affect, normal thought process, average intelligence, good impulse control, good concentration, intact memory, and intact judgment and insight, and found that the record was consistent with "at most, mild limitations." *Id.* (citing treatment records at AR at 362, 365, 369, 513, 598, 606, 638, 711, 714).

Plaintiff's contention that the ALJ's statement about "mild limitations" conflicts with his earlier findings in step two (ECF No. 6-1 at 16) is without merit. A review of the ALJ's step two findings reveals that the highest degree of limitation the ALJ found was, in fact, "mild limitation" in the area of interacting with others. AR at 19. To be sure, the ALJ found "no limitation" in the area of regulating emotion and controlling behavior at step two, not "mild limitation," but his general reference in his evaluation of Dr. Brownfeld's opinion to "at most, mild limitations" in Plaintiff's overall mental functioning does not equate to a revision of his earlier assessment in the specific area of regulating emotion and controlling behavior. Thus, the Court

finds no conflict, and that the ALJ's finding in this regard was supported by substantial evidence.

*ii. Dr. Diletti-Swenson*

The ALJ also evaluated the opinion of Sara Diletti-Swenson, M.D., a family medicine resident. AR at 487. In addition to discussing the physical restrictions in Dr. Diletti-Swenson's opinion, the ALJ noted that she "found no-to-mild impairment in mental functioning" which was supported by her diagnoses of generalized anxiety disorder and alcohol use. AR at 22 (referencing AR at 487–93). The ALJ found Dr. Diletti-Swenson's opinion of Plaintiff's mental functioning to be persuasive because it was consistent with substantial evidence found throughout the longitudinal record. *Id.* (citing treatment records AR at 362, 365, 369, 513, 598, 606, 638, 711, 714).

Plaintiff suggests that this analysis, too, conflicts with the ALJ's step two findings. ECF No. 6-1 at 16. But the Court notes that at step two, the ALJ considered the treatment record – and cited in his discussion to at least two objective examinations that Dr. Diletti-Swenson signed-off on (AR at 19 citing AR at 514, 516) – and found no limitation in three areas of mental functioning, and mild limitation in one area of mental functioning. AR at 19. In other words, the ALJ found "no-to-mild impairment." Thus, the Court finds no conflict.

*iii. FNP-C Yeneralo*

Lastly, the ALJ considered the 2023 opinion of Certified Family Nurse Practitioner ("FNP-C") Holly Yeneralo, who purported to treat Plaintiff since 2016. The ALJ found FNP-C Yeneralo's opinion that Plaintiff's mental impairments would

preclude Plaintiff from "all performance in a regular work setting" to be "not persuasive" because it was inconsistent with both FNP-C Yeneralo's own treatment notes with Plaintiff, and with the longitudinal record. AR at 23 (discussing AR at 748–55). In particular, the ALJ noted that the medical records indicated that FNP-C Yeneralo only treated Plaintiff one time, in 2021, for a skin rash, and that her treatment notes at that time indicated that Plaintiff's mood, affect, and behavior were normal. *Id.* (citing AR at 606); *see also* AR 59–61 (recording the ALJ's efforts at the hearing to find evidence of a more consistent treatment relationship). Further, as he did with the other opinions, the ALJ observed that the longitudinal record showed normal mental status findings. *Id.* (citing AR at 362, 365, 369, 513, 598, 606, 638, 711, 714).

In conclusion, the Court finds that the ALJ did not err by declining to include limitations in mental functioning in Plaintiff's RFC for her non-severe mental impairment of anxiety. *See, e.g., Joseph C. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00917-CJS, 2024 WL 4043185, at *11 (W.D.N.Y. Sept. 4, 2024) ("[I]t is fallacious for Plaintiff to argue that the absence of additional limitations in the RFC finding to account for his mild mental limitations proves that the ALJ failed to properly consider his non-severe impairments."). Further, the Court finds that, consistent with 20 C.F.R. § 404.1545(a)(2), the ALJ sufficiently considered Plaintiff's non-severe mental impairment of anxiety in assessing her RFC, and made clear that mental limitations were not included in the RFC because they were not supported by the longitudinal record. *See, e.g., Cynthia M. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00955-CJS, 2024 WL

4289537, at *8 (W.D.N.Y. Sept. 25, 2024) (affirming the ALJ's RFC determination that did not include restrictions for mild mental impairments where the ALJ's reasoning was apparent from the decision as a whole). "Thus, this is not a case where the ALJ failed to consider plaintiff's non-severe impairments in assessing plaintiff's RFC, but rather a case where the ALJ appropriately determined that such impairments did not limit her ability to perform semi-skilled work." *Grace M. v. Comm'r of Soc. Sec.*, No. 20-CV-1023SR, 2022 WL 912946, at *4 (W.D.N.Y. Mar. 29, 2022).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings [ECF No. 6] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 11] is granted. The Clerk of Court is directed to enter judgment on behalf of the Commissioner and close this case.

SO ORDERED.

DATED: October 14, 2026
Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge